IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

VS.                                                    CRIMINAL NO. 4:05CR52

LEVON WATTS KIRK

OPINION DENYING MOTION TO SUPPRESS

Presently before the Court is Defendant's motion to suppress. On October 4, 2005, the

Court heard testimony and oral argument in the above styled case addressing Defendant's

motion. Upon due consideration of the testimony and proof presented, the Court finds that the

motion should be denied.

A. Factual Summary

On the morning of June 19, 2004, Levon Watts Kirk and a juvenile female arrived at the

Fairfield Inn in Greenville, Mississippi. While Kirk went inside to see if he had enough

"complimentary" points to obtain a room, the juvenile waited outside. Prior to entering the hotel,

Kirk transferred a firearm, cigarettes, and keys to the juvenile. Upon arriving in the room, Kirk

instructed juvenile to place the firearm on the bed. The juvenile stated that she put the gun under

the left side of the mattress to get it out of the way.

On that same morning at 9:30 A.M., Officers Mark Hodges and Ozell Clay of the

Greenville Police Department were dispatched to the Fairfield Inn in reference to the welfare of a

female juvenile. Upon arrival, the officers met with Christine Tillis, who told them that she was

concerned because her sixteen-year-old daughter was in a hotel room with Levon Kirk. Officer

Hodges was familiar with Kirk and was aware that Kirk had an outstanding warrant for his arrest

for contempt of court. Officer Hodges called and confirmed the warrant. The officers then

summoned hotel security, which informed the party that Levon Kirk and the juvenile were in

Room 312.

Security Officer John Norals escorted Christine Tillis and the officers to Room 312. The group knocked on the door and waited. After a few moments, Levon Kirk opened the door. Christine Tillis asked Kirk if her daughter was in the room. Kirk told her "no," but then stated, "You can check the room if you want to." Christine Tillis entered the room and found her daughter in the corner dressing herself. Hodges advised Kirk that there was an outstanding warrant for his arrest and told him to place his hands behind his back. Kirk attempted to run and struggle, but the officers handcuffed Kirk and took him away.

Security Officer Norals returned to Room 312 after a family member asked for personal items belonging to the juvenile female. There is disputed testimony as to whether the juvenile told them she left items in the room or another family member told them. While in the room, Norals noticed a small black gun that was sticking out from between the mattress on the left side of the bed. Norals notified the police because it was hotel policy to notify the police when a weapon was found in the room. Officer Clay returned to the room and stated he could see an object between the mattress. When Norals lifted the mattress, Officer Clay retrieved the firearm.

During an interview, the female juvenile told Greenville Police that the gun found in Room 312 belonged to Levon Kirk. She explained that Kirk had given it to her earlier in the day and that she placed it between the mattress. The juvenile signed a statement and testified in front of the grand jury that Kirk gave her the gun and that it was his. In addition, she told the grand jury that she was going to change her story, but knew it was a lie to do so. During the suppression hearing, the female juvenile told a completely different story and stated that the gun was not Kirk's but instead belonged to her brother's friend. Upon cross-examination, she stated that she had made a statement and testified in front of the grand jury that the gun did belong to Kirk. Kirk

was advised of his Miranda rights, but chose not to make a statement.

Kirk has been charged as a career criminal in possession of a firearm 18 U.S.C. § 924(e), and with delivering a firearm into the possession of a known juvenile 18 U.S.C. § 922(x)(1)(A). The Defendant now moves to suppress the admission of this evidence and challenges his detention at trial based upon the Fourth and Fifth Amendments of the United States Constitution and Section 23 of the Mississippi Constitution. Defendant's motion was one sentence long and did not contain any authorities or facts to support his assertions. A hearing was held in Aberdeen on October 4, 2005. In addition, counsel were provided an opportunity to file supplemental briefs; the Defendant elected not to do so.

### B. Discussion

The Fourth Amendment protects against illegal searches and seizures. U.S. Const. amend. IV. When, as the case is here, a warrantless search or seizure is challenged, the government bears the burden of establishing its validity by a preponderance of the evidence. U.S. v. Matlock, 415 U.S. 164, 178 n.14, 94 S. Ct. 988, 996, 39 L. Ed. 2d 242 (1974) (the burden of proof at suppression hearing should be no greater than proof by a preponderance of the evidence); U.S. v. Wallen, 388 F.3d 161, 164 (5th Cir. 2004) (warrantless searches are presumptively unreasonable).

1. Private Party Searches

"There is no question that '[a] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and such private wrongdoing does not deprive the government the right to use the evidence.'" United States v. Jenkins, 46 F.3d 447, 460 (5th Cir. 1995) (quoting United States v. Bazan, 807 F.2d 1200, 1202 (5th Cir. 1986), cert. denied, 481 U.S. 1038, 107 S. Ct. 1976, 95 L. Ed. 2d 816 (1987)); Walter v. United States, 447 U.S. 649, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980). However, if a private citizen acts as a government agent or

instrument, then that citizen violates the Fourth Amendment by engaging in an unlawful search. Bazan, 807 F.2d at 1202. See Coolidge v. New Hampshire, 403 U.S. 443, 487, 91 S. Ct. 2022, 2049, 29 L. Ed. 2d 564 (1971).

In Bazan, the Fifth Circuit adopted the Ninth Circuit's two-pronged test to determine whether a private party has acted as a government agent. 807 F.2d at 1203; e.g. United States v. Pierce, 893 F.2d 669, 637 (5th Cir.1990). The Ninth Circuit held that the two critical factors in the instrument or agent analysis are: (1) whether the government knew of or acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement or to further his own ends. United States v. Miller, 688 F.2d 652, 657 (9th Cir. 1982). "[D]e minimis or incidental contacts between the citizen and law enforcement agents... will not be subject to Fourth Amendment scrutiny." Id. The government must be an active participant or an encourager of the private citizen's actions for the citizen to become an instrument of the state. Id.

In the case *sub judice*, the searches(s) were performed by private parties. The first search was Christine Tillis' search for her daughter. Ms. Tillis was a private citizen and her motives were purely personal, the location and safeguarding of her daughter. The second search involved Security Guard John Norals' search of Room 312 for the juvenile's personal belongings. Norals was acting on behalf of Tillis' family, at their suggestion, and at the suggestion of his hotel superiors. The government was not a participant in his search, nor was it the encourager of it. Norals' search was intended to find personal belongings when he spotted the firearm between the mattress. Therefore, the Court finds that Tillis and Norals were private parties and neither was acting as a government agent or instrument. Thus, the Court finds no Fourth Amendment violation.

2. Plain View Doctrine

The "plain-view" doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable. Horton v. California, 496 U.S. 128, 133, 110 S. Ct. 2301, 2306, 110 L. Ed. 2d 112 (1990). The "plain-view" doctrine must justify an exception to concerns implicated to seizures rather than searches. Id. The criteria for the "plain-view" doctrine were laid down by Justice Stewart in Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." Coolidge, 403 U.S. at 453. The Supreme Court has found the plain view doctrine applicable in several instances. First, the police may inadvertently find evidence while in "hot pursuit" of a fleeing suspect. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed. 2d 782 (1967). Second, an object comes into plain view during a search incident to an arrest. Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034 (1969). Finally, the police officer is not searching for evidence against the accused, but comes across an incriminating object. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19, L. Ed. 2d 1067 (1968).

In Horton, the Supreme Court modified its plain-view doctrine by adding a few conditions. First, the Supreme Court stated it was an essential predicate that the officer seizing the evidence did not violate the Fourth Amendment in arriving at the place the evidence could be plainly viewed. Horton, 496 U.S. at 137. The Court also stated that the item must be in plain view, and its incriminating character must be readily apparent. Id.; Arizona v. Hicks, 480 U.S. 321, 326, 107 S. Ct. 1149, 1154, 94 L. Ed. 2d 347 (1987).

In the present case, a police officer did not conduct the search of the room that led to the discovery of the firearm. Hotel Security Guard John Norals was the person who spotted the gun.

Norals was searching for personal items belonging to the female juvenile. The firearm he found

was in plain view because it was protruding out between the mattress. Norals did not arrive at the

scene of discovery in a wrongful manner. He was conducting a search for personal items. In

addition, it was immediately apparent to him that the firearm was incriminating evidence. Norals

properly notified the police of the firearm, who then seized it. The officer also did not arrive at

the scene in a wrongful manner, and the firearm's incriminating nature was immediately apparent

to the officer. Therefore, the Court finds the firearm was in plain view when discovered by the

hotel security guard.

3. Arrest

An arrest may take place at any location so long as there is probable cause to support the

arrest. See Cerva v. Fulmer, 596 F. Supp. 86 (E.D. Pa. 1984). The subject of an arrest warrant

may even be arrested in a residence, where the arresting officers have probable cause to believe

the subject is present. United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2005); United States v.

Route, 104 F.3d 59 (5th Cir. 1997). If there is sufficient evidence of a citizen's participation in a

felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to

require him to open his doors to officers of the law. Payton v. New York, 445 U.S. 573, 602-03,

100 S. Ct. 1371, 1388, 63 L. Ed. 2d 639 (1980).

The Fifth Circuit allowed the arrest of a defendant for a parole violation where the police

saw him in the open door of a hotel room. United States v. Alvarez, 6 F.3d 287, 290 (5th Cir.

1993). The officers made their announcement of arrest and the defendant backed into the room.

Id. The officers went inside the room to place him under arrest. Id. In United States v. Carrion,

the Fifth Circuit upheld a warrantless arrest made when the defendant was standing in the door of

the hotel room. 809 F. 2d 1120, 1128, (5th Cir. 1987). The defendant was first confronted in the

hallway and later arrested in the hotel room.  Id; see United States v. Mason, 661 F.2d 45, 46 (5th Cir. 1981).

In the case *sub judice*, the Defendant opened the door on his own volition.  In addition, the Defendant consented for the individuals, including the police officers, to enter the hotel room if they so chose.  Absent his consent, the officers had a valid arrest warrant in which they could have arrested him.  The premise in Payton applies to a hotel because that case extends that legal notion to include commercial establishments as well.  Therefore, because there was an outstanding warrant, the police officers were within the scope of the Fourth and Fifth Amendments to arrest Kirk when he opened the door.  Thus, the Court finds no constitutional violation during the arrest.

4.  Consent

A search conducted pursuant to consent is a well-settled exception to the Fourth Amendment's warrant requirement.  United States v. Morales, 171 F.3d 978, 982 (5th Cir. 1999) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2042, 36 L. Ed. 2d 854 (1973)).  When relying upon the consensual search exception, the government must prove, by a preponderance of the evidence, that the search was voluntary.  United States v. Jenkins, 46 F. 3d 447, 451 (5th Cir. 1995); United States v. Ponce, 8 F.3d 989, 997 (5th Cir. 1993).  See United States v, Thompkins, 130 F.3d 117, 121 (5th Cir. 1997).

The voluntariness of the consent is judged by the totality of the circumstances surrounding the search.  See Schneckloth, 412 U.S. at 227, 93 S. Ct. 2041.  Relevant factors include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with police; (4) the defendant's awareness of the his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.  Morales, 171 F.3d at 982-83; see

United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir. 1998) (citations omitted). "No single factor is dispositive or controlling of the voluntariness issue." Olivier-Becerril, 861 F.2d at 426.

In the case *sub judice*, the police officers apparently did not request to search the room, and from the record they only entered the room briefly to arrest the defendant. The arrest also occurred after the mother requested the whereabouts of her daughter. Later, Officer Clay did enter the room to retrieve the firearm, but only after Norals had requested such police presence. The Court will now consider the factors of consent.

First, the Defendant was never in custody of the police prior to Tillis' search for her daughter. The officers had accompanied Tillis to the room. Tillis knocked on the door and asked to see her daughter. The Defendant was voluntarily there and answered the door voluntarily. The first factor weighs in favor of the government. Second, no coercive police actions or procedures exist on the record. The officers were present, but did not use coercive action until the defendant tried to run, which was subsequent to Tillis' search for her daughter. Third, the Defendant appeared to cooperate with Tillis and the others present. He told them they could check the room. There is nothing on the record to indicate that Kirk was uncooperative prior to the search and his arrest. Fourth, it is not apparent if the Defendant knew he had a right to refuse. The Defendant did not testify at the hearing, but considering his lengthy record, the Defendant probably knew he had such a right. Fifth, the Defendant's education and intellectual capacity are unknown to the Court. The Defendant did not testify at the hearing and there have been no claims of diminished intelligence by the Defendant. However, considering his prior criminal activity, the Defendant should be well-schooled in matters of the criminal justice system. Finally, it is unknown what the Defendant assumed would be found or not found. The presence of a female juvenile was

incriminating, as was the presence of a firearm. However, without Defendant's testimony or a

brief to support this motion, the Court cannot determine Defendant's mindset.

Upon consideration, the Court finds that the Defendant did voluntarily consent to the

search of Room 312 for the juvenile female. Therefore, that search did not violate the Fourth

Amendment.

5.  Third Party Consent

A third party's consent to search is valid if that person has either the "actual authority" or

the "apparent authority" to consent to a search of that property. United States v. Kimoana, 383

F.3d 1215, 1221 (10th Cir. 2004); United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1230

(10th Cir.1998) (citing United States v.Rodriguez, 497 U.S. 177, 188, 110 S. Ct. 2793, 2801, 111

L. Ed. 2d 148 (1990)) See United States v. Jenkins, 46 F.3d 447, 455 (5th Cir. 1995). The test for

"actual authority" was articulated in United States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988,

39 L.Ed.2d 242 (1974). The government must demonstrate "mutual use of the property by

persons generally having joint access or control for most purposes." United States v. Gonzales,

121 F.3d 928, 938 (5th Cir, 1997) (*quoting* Matlock, 415 U.S. at 171, 94 S. Ct. 988.) The Tenth

Circuit interpreted the Matlock test in United States v. Rith, 164 F.3d 1323, 1329 (10th Cir.1999).

In Rith, the Tenth Circuit stated that "a third party has authority to consent to a search of property

if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control

for most purposes over it." Id. Therefore, the gravamen of the "actual authority" rule is that it is

reasonable to recognize that "any of the co-habitants has the right to permit the inspection in his

own right and ... the others have assumed the risk that one of their number might permit the

common area to be searched." Matlock, 415 U.S. at 171 n. 7, 94 S. Ct. 988.

The Supreme Court set forth the test for "apparent authority" in Rodriguez, 497 U.S. at

186-88, 110 S. Ct. 2793. <u>Rodriguez</u> held that the Fourth Amendment is not violated when officers enter without a warrant when they reasonably, although erroneously, believe that the person who consents to their entry has the authority to consent to this entry." <u>Id</u>. The "apparent authority" test for determining the reasonableness of the officer's belief is an objective one: "[W]ould the facts available to the officer at the moment ... warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises?" <u>Rodriguez</u>, 497 U.S. at 188, 110 S. Ct. 2793. Police officers must evaluate the surrounding circumstances in order to determine whether a reasonable person would "act upon [the invitation] without further inquiry." <u>Id</u>.

The testimony in this case conflicts over who told the Fairfield Inn that the juvenile had left personal items in Room 312. Officer Clay testified that it was the juvenile who stated she had left personal belongings in the room. However, at the suppression hearing, the juvenile testified that no one made that suggestion. In light of the juvenile's impeachment at the hearing and her previous grand jury testimony that she was trying to change her story to help the Defendant, the Court takes Officer Clay's testimony in the more favorable light. While not essential to this ruling, if the juvenile did consent, she could be considered having actual or apparent authority to give consent to search the room. The juvenile did have mutual access to the property because she was also staying in the room. She also had joint control over it. The Tenth Circuit stated in <u>Kimoana</u> that someone who was a guest in the room, stayed overnight, and left their belongings there did exercise control over the room, despite not being the paying guest. 383 F.3d at 1222. While the Defendant and the juvenile were only in the room 45 minutes, the juvenile's belongings were there. Therefore, it is possible the juvenile had actual authority to consent to the search. However, this analysis is unnecessary when considered with the fact that a private party, not the

police, searched the room.

*C. Conclusion*

Consistent with the foregoing discussion, the Court concludes that (1) the arrest was a valid arrest pursuant to a valid arrest warrant and consent by the defendant; (2) the search and seizure were performed by a private person, not acting as a government agent; (3) the firearm obtained in the search and seizure was in plain view of the security guard; (4) and the Defendant consented to the search of the room.  For the foregoing reasons, the Court finds that the government did not violate the Fourth or Fifth Amendments.  Thus, the Defendant's motion to suppress evidence is denied.

A separate order in accordance with this opinion shall issue this day.

This the 14th day of October 2005.


/s/ Glen H. Davidson
Chief Judge