# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**LEVON WATTS KIRK**                                                    **PETITIONER**

**V.**                                                    **NO. 4:05CR052-GHD**

**UNITED STATES OF AMERICA**                          **RESPONDENT**

## MEMORANDUM OPINION

Petitioner filed a § 2255 motion to vacate his sentence on October 5, 2006. The Government filed its response to the motion and Petitioner filed a traverse along with a motion to amend. This matter is now ripe for resolution.

*A. Factual and Procedural Background*

On June 19, 2004, Christine Tillis contacted the Greenville Police Department to report her concerns about her sixteen year-old daughter, Zenetta, who was in a hotel room with Levon Kirk. Officers arrived at the Fairfield Inn where Ms. Tillis believed her daughter to be in a room with Kirk. Upon their arrival, officers learned that Kirk had rented a room. Officers, Ms. Tillis and hotel security went to the room and knocked on the door. Kirk answered the door. Ms. Tillis asked if her daughter was in the room. Kirk responded that she was not and offered to let Ms. Tillis check the room. Ms. Tillis entered the room and found her daughter. Officers then placed Kirk under arrest for an outstanding warrant. Everyone left the room, but Zenetta had left something behind. A hotel security guard returned to the room to retrieve Zenetta's belongings. Upon entering the room, the guard noticed the butt of a gun sticking out from underneath the left side of the mattress. The guard then called to the police officers. Officer Ozell Clay retrieved and secured the weapon.

A ballistics expert later determined that the weapon had been manufactured in Italy and

imported into the United States through Florida. Zenetta was questioned regarding the firearm. She explained to officers that Kirk had the firearm and then handed it to her when he went pay for the hotel room. After they entered the room, according to Zenetta, she placed the firearm underneath the mattress.[1]

On April 21, 2005, Levon Kirk was charged in a two count indictment with (1) possession of a firearm by a convicted felon and (2) transferring a firearm to a juvenile. Kirk retained attorney Stan Perkins to represent him.[2] A motion to suppress was filed and a hearing was held on October 4, 2005. In a memorandum opinion, the motion to suppress was denied. On October 24, 2005, in anticipation of trial, a jury was impaneled. After the jury was seated, the court recessed for lunch. During the break and with the assistance of counsel, Kirk decided to change his plea. That same afternoon Kirk pled guilty to both counts of the indictment pursuant to a written plea agreement.

In accordance with Federal Rule of Criminal Procedure 11(c)(1)(C), the plea agreement provided that the "defendant shall be sentenced to a term of imprisonment of 15 years on Count One and that any sentence imposed on Count Two shall run concurrent to the sentence in Count One." Plea Agreement ¶ 3 (Oct. 24, 2005). The plea agreement also included a waiver provision in which Kirk agreed to waive all rights to appeal the conviction or sentence including a collateral attack pursuant to § 2255. Plea Agreement ¶ 5. After questioning Kirk, advising him of his rights and reviewing the plea agreement including the waiver clause, the court accepted Kirk's guilty plea as

---

[1] *See* Memorandum Opinion (docket entry 40) (Oct. 14, 2005) denying Kirk's motion to suppress which contains different variations of Zenetta's testimony.

[2] Prior to retaining Perkins, Kirk had been appointed two other attorneys. David Bell represented Kirk at the detention hearing and was allowed to withdraw due to a conflict of interest. Stephen Nick was the next attorney appointed. On September 8, 2005, Nick was allowed to withdraw because Kirk had retained Stan Perkins.

knowing and voluntary. See Plea Tr. 21:6-14 (Oct. 24, 2005).

A presentence report ("PSR") was prepared indicating Kirk had an offense level of 31 and a criminal history category of V, yielding a sentencing range of 168-210 months. On March 24, 2006, the court sentenced Kirk to 15 years imprisonment as provided in the plea agreement. Finally, the court reminded Kirk that he had agreed to waive any collateral attack as to the conviction and the sentence. See Sent. Tr. 13:1-9 (Mar. 24, 2006).

Undeterred by the waiver within the plea agreement or the court's admonition, Kirk filed this § 2255 motion to vacate on October 5, 2006. Kirk asserts ineffective assistance of counsel claims based upon the attorney's purported failure to (1) advise Kirk of the "interstate commerce" element; (2) fully attack the search on Fourth Amendment grounds; (3) preserve the right to appeal the court's denial of the motion to suppress; and (4) failed to challenge the court's jurisdiction. Along with his traverse, Kirk has also filed a motion to amend his original petition. By way of proposed amendment, Kirk additional arguments his ineffective assistance of counsel claim. Kirk contends (5) that his counsel's deficient performance rendered his guilty plea unintelligent and involuntary; (6) that there existed a conflict of interest between he and the attorney; (7) that his attorney failed to withdraw the guilty plea; and (8) that the attorney failed to review the presentence report or object to any portion of the report. Although the motion to amend was formally granted, the Government was given the opportunity to respond to the additional allegations.

### B. Standard for Review

After a defendant has been convicted and exhausted or waived any right to appeal, "a court is entitled to presume that [he] stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Accordingly, relief under 28 U.S.C. § 2255 is "reserved for transgressions

of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). Once a sentence of imprisonment has been imposed, the court's authority to reduce or modify the sentence is limited. *United States v. Lopez*, 26 F.3d 512, 515 (5th Cir. 1994). A criminal defendant seeking relief from his conviction or sentence in a motion to vacate pursuant to § 2255 must therefore establish one of the following: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995). As discussed in more detail below, none of these circumstances are applicable to this case.

## C. Discussion

### Proof Required for Waiver

An informed voluntary waiver of post-conviction relief is a valid bar to habeas relief. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Only claims of ineffective assistance of counsel directly affecting the validity of the waiver or the plea itself survive a knowing and voluntary waiver. *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). Courts have routinely upheld waiver provisions in the absence of ineffective assistance of counsel. *Town of Newton v. Rumery*, 480 U. S. 386, 393, 107 S. Ct. 1187, 1192, 94 L. Ed. 2d 405 (1987). Although Petitioner does assert claims for ineffective assistance of counsel, he does not directly or indirectly challenge the waiver provision contained in the plea agreement.

The waiver provision states, in relevant part:

4

> WAIVER OF ALL APPEALS AND COLLATERAL ATTACKS. Defendant Levon Watts Kirk, **hereby expressly waives his rights to** appeal the conviction and/or sentence imposed in this case, and the manner in which sentence was imposed, on any ground whatsoever . . . Defendant Levon Watts Kirk also hereby expressly waives all rights to contest or collaterally attack the conviction and/or sentence, and the manner in which sentence was imposed, in any post-conviction proceeding, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255.

Plea Agreement ¶ 5. Kirk executed the plea agreement including this waiver provision with the assistance of counsel. At his change of plea hearing, the plea agreement was reviewed in Kirk's presence assuring his assent thereto was knowing and voluntary. Kirk was twice informed of the waiver provision and how its inclusion effected his rights; once by the court and then later by the Government. Plea Tr. 12:12-14, 14:16-19. Moreover, during sentencing, Kirk was again reminded of the waiver provision and that he had "waive[d] all rights to appeal" and "waived all rights to collaterally attack the conviction in any post-conviction proceedings, including but not limited to, any motion brought pursuant to Title 28, United States Code, Section 2255." Sent. Tr. 13:1-9. In light of the record, there is simply no argument or basis to challenge the validity of the waiver. Accordingly, the court finds that Kirk has waived his right to pursue this collateral attack

### Proof Required for Ineffective Assistance of Counsel

Waiver notwithstanding, Kirk does assert various claims of ineffective assistance of counsel. When a defendant collaterally attacks his conviction or sentence based on the effectiveness of his counsel, he has the burden of proving by a preponderance of the evidence that his constitutional rights have been violated. *Johnson v. Zerbst*, 304 U. S. 458, 469, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976). In order to demonstrate ineffective assistance of counsel, a defendant must satisfy the two part test of *Strickland v. Washington*, 466 U. S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

5

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

A petitioner must satisfy both prongs of the *Strickland* test to succeed. *Id.* at 687. A defendant who, pursuant to a written plea agreement, waives his right to appeal or collaterally attack his conviction and sentence may pursue an ineffective assistance of counsel claim that directly affects the validity of the waiver or the plea itself. *See White*, 307 F.3d at 343-44. In order to show prejudice arising from an attorney's ineffective assistance during plea negotiations or with the plea itself, Kirk must show that, absent his counsel's deficiencies, he would have proceeded to trial. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

At his change of plea hearing, the court addressed Kirk and asked if it was his intention to plead guilty to Counts One and Two of the indictment to which Kirk responded, "Yes, sir." Plea Tr. 2:13-20. Continuing, the court inquired of Kirk, "are you satisfied with your attorney's representation in the matter?" Plea Tr. 5:3-7. Kirk responded affirmatively. The court advised Kirk of his right to a jury trial and the concomitant burden of proof, the right to testify, and that as a result of the guilty plea he was waiving these rights. Plea Tr. 5-6. Again, Kirk indicated that he understood these rights and the consequences of pleading guilty. Plea Tr. 5-7. The court then read both counts of the indictment which included a reference to the "interstate commerce" element of the charges. Plea Tr. 8:11-25, 9:1-5. Kirk stated that he understood the charges. Plea Tr. 9-10. The court informed Kirk of the maximum punishment he faced despite the recommendation in the plea agreement. Plea Tr. 11:4-13. The court further advised Kirk of the application of the Sentencing

Guidelines and the court's ability to impose a more harsh or less severe sentence which Kirk stated he understood. Plea Tr. 11-12.

Sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001). Given Kirk's sworn statements of understanding and acquiescence, his claim that he was unaware of the possible punishment cannot be maintained. Kirk was informed on numerous occasions in open court about the charges and possible punishment he faced. Each time he affirmatively stated he understood and had discussed these matters with his attorney. Furthermore, Kirk received a sentence at the lower end of the guideline range due to his attorney's assistance in negotiating a favorable plea agreement. If Kirk had proceeded to trial and been found guilty, he would have certainly faced a much more severe sentence. Thus, Kirk cannot establish, nor does he argue, that he would have proceeded to trial absent the alleged deficient assistance from counsel. Despite finding that the plea agreement is valid, the court will err on the side of caution and address Petitioner's claims.

<u>Ground One: Failure to advise Kirk of the "interstate commerce" element</u>

Kirk first alleges that his attorney was ineffective because he failed to inform him about the "interstate commerce" element of the charges he faced. His argument, however, is wholly contradicted by the record. On October 24, 2005, Kirk and his attorney were present and prepared to go forward with the trial. In fact, a jury was selected and testimony was to begin after a recess. During the recess, Kirk decided to change his plea and forego the trial already underway. It is illogical and completely fanciful to assume that Kirk and his attorney would not have, at some point

prior to the day of trial, discussed the elements of the charges.[3]

Furthermore, at the change of plea hearing, the court recited the charges against Kirk including each element that the Government would have to prove at trial. As to Count One, the court clearly informed Kirk of the interstate commerce element.

> The indictment in this cause, Mr. Kirk, that charge you with possession of a firearm by a previously convicted felon, which firearm had previously been transported in *interstate commerce*, the United States Government would have to prove by competent evidence, beyond a reasonable doubt, first, that you knowingly possessed a firearm as charged; second, that before you possessed the firearm, you had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense; and third, that *the possession of the firearm was affecting commerce, that is, that before you possessed it, the firearm or ammunition loaded into it had traveled at some time from one state to another or from one nation to another* . . . Now, do you understand those elements the Government would have to prove as to Count One before you could be convicted of that count?

Plea Tr. 8-9 (emphasis added). Following the thorough explanation, Kirk responded affirmatively indicating that he understood the elements–including "interstate commerce." Plea Tr. 9:2-5.

Kirk's claim that he was not informed of the interstate commerce element of Count One is completely incomprehensible given that the case was to be tried the very day he pled guilty. Moreover, the claim cannot be seriously entertained in light of the information conveyed to Kirk during his plea hearing. Information which Kirk indicated he understood. Kirk's testimony in open court is entitled to a strong presumption of truthfulness. Thus, even if counsel unbelievably failed to identify the "interstate commerce" requirement, Kirk was unequivocally informed and the element

---

[3] Also, Kirk was provided discovery which included a report drafted after an examination of the firearm. The report concluded that the weapon had been manufactured in either Italy or Hialeah, Florida therefore, satisfying the interstate nexus requirement. Kirk contends that his attorney was ineffective for failing to conduct his own investigation. But, Kirk failed to set forth exactly what any investigation would have revealed or how an investigation could have possibly refuted the Government's report.

8

was sufficiently explained to him in open court. Accordingly, Ground One is without merit.

### Ground Two: Failure to fully attack the hotel search on Fourth Amendment grounds

To hold that this claim has no merit would be a monumental understatement. In the interest of brevity, all one need do is review the transcript from the suppression hearing and the memorandum opinion denying Kirk's motion to suppress to find that the validity of the hotel search was fully and competently litigated. Kirk's attorney made every reasonable argument in an attempt to exclude the evidence seized from the hotel. Given the facts, however, there was no legal basis to sustain exclusion of the evidence. Accordingly, Ground Two is denied.

### Ground Three: Failure to preserve the right to appeal the denial of the motion to suppress

Petitioner argues that his counsel's deficient performance at the suppression hearing would have resulted in a meritorious appeal had the right to appeal the suppression hearing been preserved. In other words, counsel was doubly deficient for his inadequate representation during the suppression hearing and then counsel again acted deficiently by failing to preserve the limited right to appeal. Therefore, Petitioner's Ground Three is an extension of and essentially relies upon the success of his argument in Ground Two. As noted *supra*, Ground Two is completely meritless.

As for the claim arising out of counsel's failure to preserve the right to appeal the suppression ruling, it too is unavailing. First, the court issued a lengthy and thorough memorandum opinion addressing the motion and the arguments presented by counsel at the motion to suppress hearing. The court is not now persuaded that its prior ruling was incorrect.

Second, Kirk was fully aware of the contents of the plea agreement including the waiver provision. During his plea hearing, the court asked "I understand the plea agreement here will call for a waiver of appeal?" Plea Tr. 12:12-14. Kirk's attorney acknowledged, "It will, your Honor."

*Id.* The court continued, "Has anyone threatened you or anyone else or forced you to plead guilty, Mr. Kirk?." Plea Tr. 13:13-15. Mr. Kirk responded, "No, sir." *Id.* Later, the Government was asked to summarize the contents of the plea agreement. Plea Tr. 13:16-20. The prosecutor clearly reviewed each paragraph of the plea agreement including that "Mr. Kirk will be waiving his right to appeal the judgment and sentence in this case and will waive his right pursuant to 28 U.S.C. § 2255 to collaterally attack any sentence in this case." Plea Tr. 14:6-19. When the prosecutor concluded, the court asked Kirk if he agreed that "the substance of the plea agreement has been correctly stated here in open court?" Plea Tr. 15:16-19. Kirk stated, "Yes, sir. I said yes." Plea Tr. 15:25. Kirk had every opportunity to object to the plea agreement or offer any concerns but did not.

Even if counsel could be considered deficient for failing to preserve the limited right to appeal, Kirk has not shown that he has suffered any prejudice. As stated before, the court is not convinced that the suppression ruling was incorrect in law or fact. Thus, Kirk cannot show that but for the purported deficiency, the outcome would have been different. Furthermore, had Kirk elected to allow the trial to proceed and assuming he would have been found guilty based on the substantial unfavorable evidence, he would have, in all likelihood, been facing a much more severe sentence. With a guilty verdict, Kirk, a career criminal, would have almost certainly received a sentencing range of 210 to 262 months imprisonment. The plea agreement negotiated by his attorney capped his exposure to 180 months. In short, there simply was no nonfrivolous basis to pursue an appeal. Therefore, his attorney cannot be deemed deficient for refusing to secure an appeal and, more importantly, Kirk cannot demonstrate any prejudice flowing from the absence of an appeal.

Accordingly, Ground Three is denied.

### Ground Four: Failure to challenge the court's jurisdiction

Kirk suggests that his attorney was ineffective for failing to challenge the court's jurisdiction. More specifically, Kirk illogically argues that the charges against him were committed in the sovereign state of Mississippi and not on any federal land. Following the Government's response, Kirk rightfully abandoned this claim.

The following claims, Grounds Five through Eight, were raised by Kirk in a supplemental pleading filed after the Government's original response. The court proceeds as though the motion to supplement has been granted.

### Ground Five: Counsel's deficient performance rendered his guilty plea unintelligent and involuntary

Like arguments before, Ground Five relates back to Kirk's theory that counsel was inadequate by failing to preserve the suppression ruling for appellate review. Thus, the argument concludes, his guilty plea could not have been valid. Kirk apparently interpreted the suppression ruling as the equivalent of a loss at trial and, therefore he states, he had no "voluntary choice among alternative courses of action."

As discussed above and annotated with references to the record, Kirk was fully advised in open court of the contents of the plea agreement. After questioning Kirk, the court determined that the plea was knowingly and voluntarily entered. Contrary to his assertions in the instant petition, Kirk responded in open court that he was voluntarily pleading guilty and that he understood the consequences thereof. The court will not now hear Kirk complain that he was unaware of the effect of his guilty plea. The court finds no distinction between the collateral challenge of his guilty plea now disguised as an ineffective assistance of counsel claim. No matter the characterization of the

11

claim, Kirk's plea was fully informed, if only by the court, and the favorable agreement was negotiated with the assistance of counsel.

Finally, it was wholly Kirk's decision to accept or reject the plea agreement containing a waiver provision. While counsel is to provide guidance as to the entry of a plea, it is ultimately the defendant's decision to enter a plea or proceed to trial. *Florida v. Nixon*, 543 U. S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) (the ultimate decision to enter a plea or proceed to trial lies only with the accused). Accordingly, Ground Five is denied.

<u>Ground Six: There existed a conflict of interest between Kirk and the attorney</u>

In support of the conflict of interest claim, Kirk contends that Attorney Perkins essentially "abandon" him by advising him to accept the plea agreement being offered. Additionally, Kirk states that his dissatisfaction with Attorney Perkins' performance at the suppression hearing created a conflict. Like Ground One, this theory is wholly fanciful and contradicted by the record.

There is absolutely nothing in the record that indicates the existence of a conflict of interest or that Attorney Perkins had abandoned his client. To the contrary, the court again points out that the parties were prepared to present this case to a jury on the day that Kirk decided to change his plea. Honoring his client's wishes, Attorney Perkins then negotiated a reasonable plea agreement foregoing the risk associated with a potential guilty verdict.

It is commonly recognized that a defendant's frustration with counsel's performance or disagreement with his tactical decisions is insufficient to require substitution of counsel. *See United States v. Boone*, 437 F.3d 829, 839 (8th cir. 2006) (defendant must demonstrate "justifiable dissastisfaction"). Kirk's well documented disapproval of counsel's performance does not create a conflict of interest. In short, there is simply no direct proof or proof that could be liberally

construed to show that there existed a conflict of interest of a constitutional magnitude between Kirk and his counsel. Ground Six is denied.

### Ground Seven: Failure to withdraw the guilty plea

Kirk states that four days after he entered his guilty plea he began trying to contact his attorney to no avail. Kirk further states that he finally heard from counsel only after writing a letter to the Mississippi Bar Association. Then, according to Kirk, Perkins refused to assist him in withdrawing the guilty plea but provided Kirk a form so that he could proceed *pro se*.

A defendant does not have an absolute right to withdraw his guilty plea. *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). Prior to sentencing, "the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed. R. Crim. P. 11(d)(2). The standard for withdrawal of a guilty plea after sentencing, however, is considerably more stringent. *United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990). "A defendant seeking to withdraw a plea of guilty at the post-sentencing stage is obligated to show a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the demands of fair procedure." *Id.* at 311 (citations omitted). Further, a defendant is not entitled to an evidentiary hearing unless he has alleged sufficient facts which, if proven, would justify relief." *Powell*, 354 F.3d at 370.

If, as Kirk asserts, he tried to withdraw his guilty plea prior to sentencing, he would have been required to convince the court that such a course of action would be fair and just. Given the lengths to which all parties had gone to prepare this matter for trial, it is highly doubtful Kirk could have offered any fair and just reason for setting aside his guilty plea. In fact, he suggests that he wanted his attorney to file a motion to withdraw the plea because "he did not think that [the] plea

". . . was a good plea."

Having reviewed the entire record in this case including the transcripts from the change of plea and the sentencing hearings, the court does not find any support for Petitioner's would-be motion to withdraw the guilty plea–either prior to or after sentencing. The court is not persuaded by Kirk's "change of heart" on the matter. *See United States v. Rasmussen*, 642 F.2d 165, 166, 69 (5th Cir. 1981) (an assertion of innocence is not sufficient to contradict the defendant's sworn admission of guilt at a plea hearing). As is the case here, a defendant's "mere change of mind is insufficient to permit withdrawal of a guilty plea before sentencing, much less after sentencing." *Hoskins*, 910 F.2d at 311.[4] Therefore, Ground Seven does not provide a basis for habeas relief.

<u>Ground Eight: Failure to review the presentence report or object to any portion of the report</u>

Kirk states that his attorney never reviewed the presentence report with him in contradiction of Rule 32. Rather, an investigator came to the jail and asked Kirk to sign the PSR. *See* Sent. Tr. 8:20-22; 10:3-16. Kirk claims that the PSR incorrectly indicated that he did not have a highschool diploma when, in fact, he has a GED. Kirk further contends that he could have refuted two points he received towards his base level score which has caused him to be housed in a high security prison. In other words, Kirk argues that had he been given the opportunity to review the PSR with his attorney he could have reduce his base level score and would be housed in a medium security prison.

Rule 32(i)(1)(A) provides that, "At sentencing, the court: must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed. R. Crim. P. 32. There is no absolute rule that the court "specifically ask a defendant

---

[4] *See United States v. Brewster*, 137 F.3d 853, 857 (5th Cir. 1998) discussing the more lenient standard of review and the factors applicable to withdrawal prior to the imposition of a sentence.

whether he has read the PSIR" *United States v. Victoria*, 877 F.2d 338, 340 (5th Cir. 1989). The court is permitted to "draw reasonable inferences from court documents, the defendant's statements, and counsel's statements" to determine whether the defendant has been given an opportunity to read the PSR with his counsel. *Id.* at 340. The court errs by failing to confirm that a defendant has had the opportunity to read and discuss the PSR with his attorney. *United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001) (defendant must have the "opportunity to read the PSR with his counsel" but resentencing was not necessary where the error was not prejudicial). Nevertheless, the err does not require "automatic reversal" unless accompanied by prejudice. *Id.* at 274.

The record is clear that there were no objections filed to the PSR. Sent. Tr. 9:11-13. It is also clear that Kirk's current claim is consistent with his statements at sentencing. Sent. Tr. 10:3-16. At sentencing, an obviously frustrated Kirk expressed his dissatisfaction with attorney Perkins and explicitly stated that he had never seen nor did he sign the PSR. Sent. Tr. 10:11. Then, Kirk explained the investigator came to visit him at the jail and displayed the PSR though the glass window separating the two of them. Sent. Tr. 10:3-16. According to his own statements in open court, Kirk stated that he told the investigator "I'm not signing it." Sent. Tr. 10:14-15.

Taking his averments as truth, an attorney would be ill-advised to send a layperson in his stead to review the PSR.[5] *See Esparza-Gonzalez*, 268 F.3d at 274 (defense counsel's review of the PSR does not imply that the defendant also had the opportunity to review the PSR). Here, the court accepts the allegation that Attorney Perkins failed to personally review the PSR with Kirk. The error

---

[5] That is not to say an attorney must have a face-to-face meeting in order to review or discuss the PSR. For example, it would be entirely appropriate for an attorney to ensure his client receives a copy of the PSR and then, at the very least, discuss it with his client over the telephone.

may have been compounded when, due to Kirk's lengthy diatribe at sentencing, the court failed to make the Rule 32(i)(1)(A) inquiry of Perkins or Kirk. This, however, does not entitle Kirk to the relief he seeks.

To the contrary, assuming that Kirk has demonstrated Perkins' performance was deficient when he failed to review the PSR with his client, Kirk must also satisfy the second prong of *Strickland*—that he was prejudiced by the deficiency. In support thereof, Kirk argues that he was prejudiced by the absence of consultation because he received two points towards his "base level score" which could have been avoided. If he had been given the opportunity to review the PSR with Perkins, Kirk suggests he would have corrected information indicating that he did not possess a highschool diploma. Instead, Kirk argues, the failure to review the PSR with his attorney has caused prejudice because he is housed in a "high security" prison based upon the erroneously calculated score.

For a number of reasons, Kirk's argument must fail. First, the Sentencing Guidelines to not provide consideration or any adjustment for a defendant's level of education.[6] In fact, the Guidelines expressly advise against the use of education and vocation as a relevant factor for sentencing. U.S.S.G. § 5H1.2. That section specifically provides that, "[e]ducational and vocational skills are not ordinarily relevant in determining whether a departure is warranted." *Id.*; *see United States v. Desormeaux*, 952 F.2d 182, 185 (8th Cir. 1991) (fact that defendant obtained a GED following her arrest was not sufficient to warrant downward departure from guidelines). Therefore, Kirk's

---

[6] Except in special circumstances, not applicable here, education might be a consideration where a defendant uses a skill to perpetrate an offense. U.S.S.G. § 3B1.3; *United States v. Olis*, 429 F.3d 540, 549 (5th Cir. 2005) (defendant used his "special skills in accounting and tax matters to advance an extremely sophisticated, but fraudulent scheme.").

sentence would have been unaffected even if the PSR had correctly noted his education level. *See United States v. Paige*, 132 Fed. Appx. 526, 527, 2005 WL 1240143 at *1 (5th Cir. May 25, 2007) (court's failure to comply with Rule 32(i)(1)(A) was not plain error where defendant failed to show that he was prejudiced by the noncompliance); *United States v. Rangel-Arreola*, 991 F.2d 1519, 1525-26 (10th Cir. 1993) (court's failure to ensure that defendant had opportunity to review and discuss PSR was harmless error where defendant suffered no prejudice); *cf. United States v. Simon*, 87 Fed. Appx. 355, 359, 2004 WL 249598 at *4 (5th Cir. Feb. 10, 2004) (fact that court failed to comply with the procedural requirements of Rule 32(i)(1)(A) and defendant stated at sentencing that he had not reviewed the PSR required resentencing).

Furthermore, even though the PSR incorrectly identified Kirk's level of education, the fact that he possessed a GED was plainly before the court. At the change of plea hearing after questioning by the court, Kirk clearly stated that he had received a GED. Plea Tr. 3:18-21. Accordingly, due consideration was given to Kirk's education. There was, however, nothing extraordinary about Kirk's educational or vocational background that would warrant departure from the Guidelines. *See United States v. Drew*, 131 F.3d 1269, 1270 (8th Cir. 1997) (higher or lower intelligence of defendant is not unusual enough to warrant departure).

Also, recall Kirk's argument is that but for the error only his custodial classification would be different–not his sentence. It is well settled that the Federal Bureau of Prisons is vested with broad discretion in determining custodial classifications. *Moody v. Daggett*, 429 U. S. 78, 88 n.9, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976). Thus, inmates have no right to a particular classification within the penal system. *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). But, Kirk's argument misses the point. To obtain habeas relief, generally a defendant must show that the result of the

proceedings would have been different. *Strickland*, 466 U. S. at 694. A defendant's custodial classification has never justified habeas relief. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (there is no constitutional implication even if the custodial classification affects the duration of an inmate's term of confinement by impacting his ability to earn good-time credits). In any event, Kirk cannot show that the results would have been different because his sentence was capped by the Rule 11(c)(1)(C) recommendation in the plea agreement–not by any factor included or omitted in the PSR.

In addition, by his own admission, Kirk refused to sign the PSR when given the opportunity. His behavior also suggests that he may have preemptively refused to review the PSR when the investigator presented it at the jail. A defendant who consciously or intentionally caused an error cannot later be heard to decry its effects. *See United States v. Goode*, 483 F.3d 676, 682 (10th Cir. 2007) (the court should avoid engendering obstructive tactics by defendants). Therefore, Kirk has failed to demonstrate any prejudice resulting from the error of counsel. Accordingly, Ground Eight is denied.

*D. Conclusion*

It should be noted that Kirk's dissatisfaction with Attorney Stan Perkins was no secret. At his sentencing, Kirk castigated Perkins in open court. Sent. Tr. 2-7. The court allowed Kirk the opportunity to vent his frustrations and then noted Perkins' years of experience. Sent. Tr. 8:1-19. Despite Perkins' mistake, the assistance rendered did not fall below any constitutionally acceptable standards. To the contrary, Kirk benefitted from Perkins' able assistance by receiving a reasonable sentence and having a separate pending indictment dismissed. *See United States v. Kirk*, No. 3:05CR073. Kirk's claims, neither singularly or collectively, rise to a level worthy of habeas relief.

For all the foregoing reasons, Petitioner's § 2255 motion is dismissed with prejudice.

A final judgment in accordance with this opinion will be entered.

THIS the 29th day of October, 2008.

/s/ Glen H. Davidson
SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI